UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| BANK OF AMERICA, N.A., | : | |
| Plaintiff-Garnishee, | : : : | |
| v. | : : | Case No. _____ |
| JOHN DOES 1 THROUGH 7, | : : | **COMPLAINT ALLEGING CLAIMS IN THE NATURE OF INTERPLEADER** |
| VTB BANK (EUROPE) SE i.L., | : : | |
| VTB BANK PJSC SHANGHAI BRANCH, | : : | |
| Defendants-Adverse Claimants | : : | |
| | x | |

Plaintiff-Garnishee Bank of America, N.A. ("BANA"), by and through its undersigned attorneys, in support of its Complaint Alleging Claims in the Nature of Interpleader, alleges, upon personal knowledge as to itself and on information and belief as to all else, as follows:

**NATURE OF THE ACTION**

1.      BANA brings this interpleader action to resolve competing claims to two blocked correspondent accounts held in the names of VTB Bank (Europe) SE i.L. ("VTB Europe") and VTB Bank PJSC Shanghai Branch ("VTB Shanghai"), respectively, whch are collectively valued at more than $75 million.

2.      VTB Bank PJSC ("VTB Parent," and collectively with VTB Europe and VTB Shanghai, "VTB"), is a financial institution majority-owned by the Government of the Russian Federation ("Russia").  VTB Shanghai is the branch office of VTB Parent in Shanghai, China, and VTB Europe is a German subsidiary of VTB Parent.  VTB Shanghai and VTB Europe each opened a correspondent account with BANA's New York branch (the "Accounts").

3.      Following Russia's invasion of Ukraine, the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") issued regulations blocking all property in which

VTB has an interest if such property was held in the United States or with a U.S. person like BANA.  BANA therefore blocked the two Accounts in accordance with OFAC's regulations.

4.     Certain judgment creditors known by the pseudonyms John Does 1 through 7 (the "Does"), are victims of acts of terrorism allegedly committed by the Taliban, Al-Qaeda, and the Haqqani Network (the "Judgment Debtors"), and hold a default judgment against those terrorist organizations in the amount of $138,418,741.  On March 20, 2023, the Does obtained a Writ of Execution from the U.S. District Court for the Western District of North Carolina that purports to attach the VTB Accounts based on the Does' allegations that VTB is an agency or instrumentality of the Taliban and that its property is subject to attachment and execution under Section 201(a) of the Terrorism Risk Insurance Act, 28 U.S.C. § 1610 note ("TRIA").  *See* Order for Issuance of Writ of Execution, *John Does 1 Through 7 v. The Taliban, et. al.*, No. 3:20-mc-00206 (W.D.N.C. Mar. 20, 2023) (ECF No. 16).  According to the Does' Motion for an Order of Execution, "Russia was, at the time of the attack on [the Does], a patron of the Taliban, used its financial institutions to support the Taliban, and even directly supported Taliban attacks on Americans such as the attack at the heart of this case," and "these well-known connections between Russia and the Taliban . . . are funded through Russian banks," such as VTB.  *See* Motion for Order of Execution, *John Does 1 Through 7 v. The Taliban, et. al.*, No. 3:20-mc-00206 (W.D.N.C. Mar. 20, 2023) (ECF No. 15).

5.     The Does served the Writ of Execution on BANA on March 29, 2023, and provided notice to VTB Europe on April 3, 2023.  On April 27, 2023, the Does filed a motion for release of funds against BANA.  *See* Motion for Release of Funds Held by Garnishee Bank of America, N.A., *John Does 1 Through 7 v. The Taliban, et. al.*, No. 3:20-mc-00206 (W.D.N.C. Apr. 27, 2023) (ECF No. 20).  A copy of that motion is attached as Exhibit A.

6.      Because it is a disinterested, neutral stakeholder in respect of the Accounts, BANA brings this action to place VTB on notice of the claims being asserted by the Does, and to resolve the competing claims in a single action, thereby avoiding the risk of inconsistent judgments and double or multiple liability.  An interpleader action is necessary to formally join VTB so it will be bound by any final turnover order that might be entered, and the Court can fully discharge and release BANA from any liability to VTB.  BANA has filed the action in this Court because the Accounts are situated in this District, and although VTB it is not located in the United States and may not be subject to jurisdiction in North Carolina, it consented to jurisdiction in New York when it opened the Accounts here.  Accordingly, BANA seeks to interplead the Does and VTB pursuant to Fed. R. Civ. P. 22, New York Banking Law ("NYBL") § 134, and NY CPLR §§ 1006 and 5239.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction over this proceeding under 28 U.S.C. § 1330 because VTB is majority-owned by Russia.[1]  As a result, VTB is an agency or instrumentality of Russia and thus a "foreign state" within the meaning of Section 1603(a) of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603(a) ("FSIA").

8.      This Court also has subject-matter jurisdiction over this proceeding under 28 U.S.C. § 1331 because the Does' competing claims to the Accounts arise only under federal law—specifically, TRIA § 201(a)—the Accounts are blocked under OFAC sanctions regulations, and VTB's property may be entitled to sovereign immunity under Section 1609 of the FSIA.

---

[1] At least VTB Shanghai, a branch of VTB Parent, is directly majority owned by Russia, and thus an agency or instrumentality of Russia under *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003). VTB Europe is a subsidiary of VTB Parent and thus indirectly majority-owned by Russia.

9.      This Court also has subject-matter jurisdiction over this proceeding under 28

U.S.C. § 1332 because there is complete diversity among the parties and the amount in

controversy exceeds $75,000.[2]

10.     Venue over the interpleader claims is proper pursuant to 28 U.S.C. § 1391(b)(2)

because the Accounts are situated in this District and thus a substantial part of the property at

issue is located in this District.

11.     Because the Accounts are situated in this District, the Court has jurisdiction over

the Accounts and may exercise *quasi in rem* jurisdiction over both the Does and VTB to

adjudicate their claims to the Accounts.

12.     Moreover, VTB agreed to BANA's standard Deposit Agreement and Disclosures

when the accounts were opened, which provides that "[a]ny arbitration, lawsuit or other

proceeding regarding your account must be brought in the state where we opened or, if different,

currently maintain your account; and you submit to the personal jurisdiction of that state." *See*

Deposit Agreement and Disclosures at 21.  Because the Accounts were opened and maintained at

BANA's New York branch located in this District, VTB agreed to venue and personal

jurisdiction in this District.

**PARTIES TO THE INTERPLEADER COMPLAINT**

**Plaintiff-Garnishee BANA**

13.     BANA is a national banking association with its head office in Charlotte, North

Carolina, and with offices throughout the United States, including in the Southern District of

---

[2] The Court would also have subject-matter jurisdiction over this proceeding under 28 U.S.C. § 1335, but for the fact that BANA cannot deposit the Accounts with the Court or use them as collateral for a bond without an OFAC license.

New York.  BANA maintains the Accounts that are the subject of the Does' proposed turnover motions and this interpleader action.

**Defendants-Adverse Claimants the Does**

14.     Upon information and belief, the Does, who are identified only anonymously in their complaint and judgment, are victims of terrorism allegedly committed by the Judgment Debtors.

15.     Upon information and belief, John Doe 1 is a U.S. citizen residing in Silverdale, Washington.

16.     Upon information and belief, John Doe 2 is a U.S. citizen residing in Fresno, California.

17.     Upon information and belief, John Doe 3 is a U.S. citizen residing in Jonesborough, Tennessee.

18.     Upon information and belief, John Doe 4 is a U.S. citizen residing in El Paso, Texas.

19.     Upon information and belief, John Doe 5 is a U.S. citizen residing in Euless, Texas.

20.     Upon information and belief, John Doe 6 is a U.S. citizen residing in Henderson, Nevada.

21.     Upon information and belief, John Doe 7 is a U.S. citizen residing in Randallstown, Maryland.

**Defendant-Adverse Claimant VTB**

22.     Upon information and belief, VTB Parent is a financial institution organized under the laws of Russia with its head office in St. Petersburg, Russia.  Upon information and

belief, VTB Shanghai is a branch office of VTB Parent located in Shanghai, China.  VTB Parent

is directly majority-owned by Russia.

23.     Upon information and belief, VTB Europe is a financial institution organized

under the laws of Germany with its head office in Frankfurt, Germany.  VTB Europe is a

subsidiary of VTB Parent, and a majority of its stock is owned by VTB Parent and thus indirectly

by Russia.

24.     Following the European Union's imposition of sanctions against VTB Parent in

April 2022, the German Federal Financial Supervisory Authority ("BaFin") prohibited VTB

Parent from exercising its voting rights over VTB Europe and instructed the bank's management

not to follow VTB Parent's instructions.  BaFin also appointed a special representative to

manage the bank.  VTB Europe was placed into liquidation effective April 1, 2023.

25.     VTB Shanghai and VTB Europe are each listed as an accountholder for one of the

two Accounts on BANA's books, as indicated above.

26.     BANA reserves the right to amend the Complaint if it learns of any other person

or entity who may have a claim to the Accounts, in whole or in part.

**THE DOES' TERRORISM JUDGMENT AND TRIA**

27.     On November 5, 2020, the Does obtained judgments against the Judgment

Debtors under the Anti-Terrorism Act ("ATA"), as a result of the injuries caused by the

Judgment Debtors' acts of terrorism committed against the Does.

28.     Section 201(a) of TRIA permits certain creditors with judgments entered against a

terrorist party to attach and execute against blocked assets belonging to the agencies or

instrumentalities of that terrorist party.  Specifically, Section 201(a) of TRIA provides:

> [I]n every case in which a person has obtained a judgment against a terrorist
> party or a claim based on an act of terrorism, or for which a terrorist party
> is not immune under section 1605(a)(7) of title 28, United States Code, the

6

blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable. (codified at 28 U.S.C. § 1610 note (emphasis added)).

29.    Each of the Judgment Debtors have been designated by the United States government as foreign terrorist organizations under section 219 of the Immigration and Nationality Act.

30.    On July 2, 2002, George W. Bush designated the Taliban as a Specially Designated Global Terrorist pursuant to Executive Order ("E.O.") 13268, https://fas.org/irp/offdocs/eo/eo-13268.htm.

31.    On October 8, 1999, the U.S. Department of State designated Al-Qaeda as a Foreign Terrorist Organization pursuant to Title 8 U.S.C. § 1189, U.S. Dept. of State, Office of the Coordinator for Counterterrorism, https://www.state.gov/foreign-terrorist-organizations/.

32.    On September 19, 2012, the U.S. Department of State designated The Haqqani Network as a Foreign Terrorist Organization pursuant to Title 8 U.S.C. § 1189, U.S. Dept. of State, Office of the Coordinator for Counterterrorism, https://www.state.gov/foreign-terrorist-organizations/.

## VTB'S ACCOUNTS ARE BLOCKED

33.    Several years before Russia invaded Ukraine, VTB Europe and VTB Shanghai opened correspondent accounts at BANA's New York branch.

34.    On February 24, 2022, following Russia's invasion of Ukraine, OFAC also designated VTB Parent and its subsidiaries as sanctioned entities under the Russian Foreign Activities Sanctions Regulations for being owned or controlled by, or for having acted or purported to act for or on behalf of, directly or indirectly, Russia, and for operating or having operated in the financial services sector of the Russian economy.

7

35.     Following OFAC's designation of VTB, BANA identified and blocked the following Accounts:

      a)      Account No. ███████0294, held in the name of VTB Shanghai, which was valued at approximately $765,750.90 at the time of the blocking; and

      b)      Account No. ███████6801, held in the name of VTB Europe, which was valued at approximately $75,065,329.72 at the time of the blocking.

**THE DOES ATTEMPT TO USE VTB'S ACCOUNTS TO SATISFY THEIR JUDGMENT**

36.     On March 20, 2023, the U.S. District Court for the Western District of North Carolina granted the Does' motion for an Order of Execution seeking to attach the Accounts, based on the Does' allegations that VTB is an agency or instrumentality of the Judgment Debtors and their property is subject to attachment and execution under Section 201(a) of TRIA. *See* Order for Issuance of Writ of Execution, *John Does 1 Through 7 v. The Taliban, et. al.*, No. 3:20-mc-00206 (W.D.N.C. Mar. 20, 2023) (ECF No. 16).

37.     According to the Does' Motion for an Order of Execution, "Russia was, at the time of the attack on [the Does], a patron of the Taliban, used its financial institutions to support the Taliban, and even directly supported Taliban attacks on Americans such as the attack at the heart of this case," and "these well-known connections between Russia and the Taliban . . . are funded through Russian banks," such as VTB. *See* Motion for Order of Execution, *John Does 1 Through 7 v. The Taliban, et. al.*, No. 3:20-mc-00206 (W.D.N.C. Mar. 20, 2023) (ECF No. 15).

38.     The Does served the Writ of Execution on BANA on March 29, 2023.

39.     The Does filed a motion for release of funds against BANA on April 27, 2023. *See* Exhibit A.

40.     According to the Does' Motion for Release of Funds Held by Garnishee Bank of America, N.A., "VTB Bank Europe SE plays a key role" in the relationship between Russia and

the Taliban, "as it is a subsidiary of an instrument of the Russian Government that Russia uses to fund destabilizing activities."  The Does allege that VTB Bank Europe SE is "critical to VTB Bank's overall strategy of expanding Russia's reach" into European Markets by "rais[ing] money and transfer[ing] money to and on behalf of terrorist organizations" and "fund[ing] activities akin to the destabilizing activities that Moscow has undertaken in support of Taliban operations." The Does argue that "[b]ecause of the role VTB Bank Europe SE plays in Russia's illicit financial network, which provides material services to the Taliban, and because of the Taliban's reliance on this network for financing, VTB Bank Europe SE qualifies as an agency or instrumentality of the Taliban."  *See* Exhibit A at 16-17.

## THE NEED FOR INTERPLEADER RELIEF

41.     BANA has filed this Complaint in order to bring before the Court known parties with claims to the Accounts and to obtain a discharge in interpleader.

42.     Under these circumstances, where there may be conflicting claims to assets held by BANA, thereby exposing it to the risk of double or multiple liability, federal and state law recognize BANA as a disinterested or neutral stakeholder, and provide mechanisms for it to bring before the Court any person or adverse claimant with a claim to the same assets who may not already be party to the action.  *See* Fed. R. Civ. P. 22; N.Y. Banking L. § 134; N.Y. C.P.L.R. §§ 1006, 5239; *see also Hauser v. JPMorgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, 541-42 (S.D.N.Y. 2010) (recognizing that interpleader relief is warranted in TRIA turnover proceedings because banks holding blocked assets may be subject to double liability); *Weininger v. Castro*, 462 F. Supp. 2d 457 (S.D.N.Y. 2006) ("[T]he Court finds that [the bank] faces a reasonable fear of double liability or conflicting claims, and that relief by way of interpleader is warranted with respect to the [TRIA blocked assets.]").

43.     BANA takes no position on the entitlement of the Does to execute on their default

judgments held against the Judgment Debtors, or on the defenses that any other claimants may

have against such execution.

44.     BANA does take the position, however, that before any turnover order is entered,

the Court should make all the necessary findings under Section 201(a) of TRIA, as detailed in

BANA's Prayer for Relief.  Among other things, the Court should address: (i) whether the

Accounts are owned by VTB; (ii) whether VTB is an agency or instrumentality of the Taliban at

the time of turnover, and whether VTB Europe is still an agency or instrumentality following the

intervention by German regulators; and (iii) whether TRIA and the alleged relationship between

VTB and the Taliban is sufficient to waive any sovereign immunity that VTB may enjoy as an

agency or instrumentality of Russia.

**Ownership is a Prerequisite to Execution**

45.     Section 201(a) of TRIA permits attachment of "blocked assets *of* any agency or

instrumentality of that terrorist party," and therefore requires a showing that the alleged agency

or instrumentality has an ownership interest in the blocked assets.  *See Levin v. JPMorgan Chase

Bank, N.A.*, 751 F. App'x 143, 174 (2d Cir. 2018).  Ownership interests in blocked assets are

determined by reference to state law.  *See Calderon-Cardona v. Bank of N.Y. Mellon*, 770 F.3d

993, 1001 (2d Cir. 2014); *Hausler v. JPMorgan Chase Bank, N.A.*, 770 F.3d 207, 212 (2d Cir.

2014).  New York presumes that the named accountholder is the owner of a bank account, and

permits a bank to disregard competing claims to the account unless there is a court order to the

contrary.  Specifically, Section 134(4) of the New York Banking Law provides:

> A bank or trust company need not recognize or give any effect to a
> claim of authority . . . for the account of, any person, corporation,
> unincorporated association or partnership, which claim conflicts
> with a claim of authority of which the bank or trust company had
> prior notice, unless the person or persons asserting such subsequent

claim shall procure a restraining order, injunction or other
appropriate process against said bank or trust company from a court
of competent jurisdiction.

**VTB Must Be Proved to Be an Agency or Instrumentality of the Taliban**

46.     The Court must also determine whether either VTB Europe or VTB Shanghai is

an agency or instrumentality of the Taliban.  In making this determination, the Court should

determine whether they must remain agencies or instrumentalities of the Taliban at the time of

turnover.  *See Harrison v. Republic of Sudan*, No. 13-CV-3127 (PKC), 2017 WL 946422, at *4

(S.D.N.Y. Feb. 10, 2017) ("Because jurisdiction depends upon the state of things at the time the

action is brought, an entity's agency or instrumentality status under the FSIA is determined at the

time of the filing of the complaint.").  Furthermore, because German regulators have blocked

VTB Parent's control over VTB Europe and appointed a special representative to manage the

bank, the Court should decide whether VTB Europe remains an agency or instrumentality of the

Taliban at the time of turnover.

**The Court Should Decide Whether VTB Is Entitled to Sovereign Immunity**

47.     Finally, because VTB is owned or controlled by Russia, the Does' claims for

turnover of the Accounts raise issues regarding sovereign immunity.  In a recent Statement of

Interest entered in *Caballero v. FARC*, No. 1:20-mc-00040 (W.D.N.Y. Sept. 20, 2022) (ECF

125), the United States took the position that "TRIA—which expands exceptions to the

attachment immunity normally afforded foreign states—does not provide an independent basis

for subject-matter jurisdiction against a foreign state that is not a state sponsor of terrorism, as

designated by the Executive," and therefore the judgment creditor of a non-state actor (in that

case, the FARC) "must satisfy one of the exceptions to foreign state jurisdictional immunity

provided in 28 U.S.C. §§ 1605 to 1607 in order to execute against" assets belonging to an agency

or instrumentality of a foreign state (in that case, Venezuela).  *See also In re Terrorist Attacks*

*on Sept. 11, 2001*, No. 01-CV-10132, 2023 WL 2138691, at \*7-10 (S.D.N.Y. Feb. 21, 2023)

("[T]he Judgment Creditors cannot use TRIA to reach DAB's assets because their judgments are against the non-sovereign Taliban—not the sovereign nation of Afghanistan—and Afghanistan has never been designated as a state sponsor of terrorism."). The Court should hold appropriate proceedings and make findings of fact and law as to whether VTB enjoys any sovereign immunity as an agency or instrumentality of Russia, and whether TRIA and the alleged relationship between VTB and the Taliban is sufficient to overcome any such immunity.

**The Court's Ability to Discharge BANA**

48. BANA also takes the position that to the extent that VTB or any other claimant appears, this Court may adjudicate ownership rights under the Accounts, and such adjudication will permit BANA to be relieved of further liability. But if VTB, or any other individual with an interest in the Accounts and actual notice of these proceedings, fails to appear to assert a defense to execution or a claim to the Accounts in question, the Court may adjudicate and issue final judgment on all issues bearing on the rights of the defaulting VTB and any absent adverse claimant with respect to the Accounts.

49. In the event of turnover, the Court also may grant BANA a complete discharge from all liability to VTB and any absent adverse claimants to the fullest extent of federal and state law, including under the Deposit Agreement between BANA and VTB. The Deposit Agreement provides that, "[i]f an order directs us to turn over funds or other property, then, depending on the type of order, we either immediately deliver the funds or property or hold them for a legally permitted period – usually no longer than 21 days," and that BANA "may accept and act on any legal process that we believe to be valid without any liability by us to you." *See*

Exhibit B at 21.[3]  Thus, even if VTB does not appear after being served with process, the Court

may issue a declaratory judgment binding on VTB that any turnover order is valid and that

BANA can act on it without any further liability to VTB.

## PRAYER FOR RELIEF

WHEREFORE, BANA respectfully requests that the Court:

    a.    determine what rights, if any, the Does and VTB have to the Accounts,

including:

1. determining whether or not the Accounts, in whole or in part, consist of "blocked assets" within the meaning of TRIA, whether the blocked assets are owned by VTB, and whether VTB is an "agency or instrumentality" of a "terrorist party" within the meaning of TRIA at the time of turnover;

2. determining whether VTB is an agency or instrumentality of Russia entitled to sovereign immunity from attachment under 28 U.S.C. § 1609, and whether TRIA waives that sovereign immunity if VTB is also found to be an agency or instrumentality of the Judgment Debtors;

3. determining whether the judgment as to which execution or garnishment is ordered is against terrorist parties within the meaning of TRIA and the ATA, on either (i) a claim based on an act of terrorism within the meaning of these acts, or (ii) a claim in respect of an act of terrorism for which a terrorist party is not immune under 28 U.S.C. § 1605(a)(7) or 28 U.S.C. § 1605A;

4. determining whether the judgment as to which execution or garnishment is ordered is based on the ATA;

5. determining whether the judgment as to which garnishment or execution is ordered, including interest, is solely for compensatory, not punitive, damages in respect of which the terrorist party has been adjudged liable inasmuch as TRIA § 201(a) only permits execution upon blocked assets in aid of execution in order to satisfy judgments "to the extent of any compensatory damage for which [a] terrorist party has been adjudged liable";

6. determining, to the extent TRIA is not relied upon, is not applicable, or is deemed not to supersede OFAC's licensing requirements, whether any garnishment or execution has been licensed by the OFAC, and the Accounts

---

[3] "Legal process" is defined to include a writ of attachment or execution, levy, garnishment, "or other similar order relating to your account."  Deposit Agreement and Disclosures at 21.

against which garnishment or execution is ordered consist of blocked property that is not immune from execution within the meaning of the FSIA or of the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations;

7. determining whether TRIA allows the Accounts against which garnishment or execution is ordered to be executed against to satisfy a judgment against the Judgment Debtors in the underlying action, irrespective of whether they would otherwise be immune from garnishment or execution; and

8. determining whether the Accounts against which garnishment or execution is ordered are not property subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations, or blocked assets in respect of which no waiver of the provisions of TRIA can be made by the President with respect thereto within the meaning of Section 201(b) of TRIA;

b. direct BANA as to how it is to proceed with respect to the Accounts;

c. determine that BANA's service of this Complaint, with a summons, upon the Defendants constitutes good and sufficient service;

d. if the Court orders the Accounts, in whole or in part, to be turned over to the Does or any other third party, order that BANA is released from any and all liability to the Does, VTB, and any other third party who may have a claim to the blocked property, and is discharged in interpleader from this garnishment action;

e. if the Court orders the Accounts, in whole or in part, to be turned over to the Does or any other third party, issue a declaratory judgment that the Deposit Agreement is enforceable and binding on VTB, that any turnover order is valid, and that BANA has no liability to VTB under the terms of the Deposit Agreement for complying with such a turnover order;

f. award BANA its costs and expenses in this proceeding, including reasonable attorney's fees; and

g. grant such other and further relief to BANA as may be just and proper.

14

Dated:    April 28, 2023

DAVIS POLK & WARDWELL LLP

By:    */s/ Craig T. Cagney*
      Michael S. Flynn
      Craig T. Cagney

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
michael.flynn@davispolk.com
craig.cagney@davispolk.com

*Attorneys for Bank of America, N.A.*

15