**do Campo & Thornton, P.A.**                                                             ATTORNEYS AT LAW

CHASE BANK BUILDING
150 S.E. SECOND AVENUE • SUITE 602
MIAMI, FLORIDA 33131
PH 305 358 6600 • FAX 358 6601
DANDTLAW.COM

July 27, 2023

**VIA ECF**
The Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square – Courtroom 705
New York, NY 10007

Re:   *Bank of America, N.A., v. John Does 1 Through 7, et al.*, Case No. 1:23-cv-03604

Dear Judge Gardephe:

John Does 1-7 ("Does") hereby respond to the premotion conference letter submitted by VTB Bank Europe SE ("VTBE") on July 21, 2023. The motions VTBE intends to file, like the interpleader action naming Does, have no basis in law or fact.

First, to set the record straight concerning the wild statements in VTBE's opening two paragraphs: VTBE is a Russian Federation-owned bank that, until March 24, 2023—that is four days after Does commenced their action against its blocked assets in North Carolina—did business in Germany while being controlled ultimately by Vladimir Putin. At noon on March 24, 2023, German banking regulators, citing "de facto" control of VTBE by other companies in the larger VTB structure, made the finding that they were unable to control VTBE because VTBE's Russian ownership and employees—Russian nationals—were apt to transfer assets at the behest of the Russian Federation "despite" the prior measures Germany had taken to try to control VTBE; on those findings, the German regulators issued an order liquidating VTBE. *See* Dkt. 21-2:2-7. Does, in fact, had alleged just that in their March 20, 2023 writ application—that VTBE was ultimately controlled by the Russian Federation—*i.e.* Putin-controlled—and that it was part of the network Russia used to finance nefarious international activities, including financing the Taliban. *See* WDNC action Dkt. 15:3. On these grounds, Does sought to satisfy their terrorism judgment against the Taliban by executing against VTBE's blocked assets pursuant to Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA").

More than a full year prior to Germany's findings, on February 22, 2022, the United States had sanctioned VTBE as part of Russia's financial network. By March 18, 2022, a Bank of America ("BANA") employee (or employees) in Charlotte, North Carolina had closed a correspondent banking account that VTBE held in New York and had transferred the funds from it into a newly created account: Blocked Account 4851. Dkt. 26-1, 26-2. The prior correspondent account had held the assets of VTBE, which is ultimately owned by the Russian Federation; Blocked Account 4851 thus also holds

assets of VTBE, and ultimately the Russian Federation, and not innocent depositors.[1] Contrary to VTBE's unsupported assertion, there was no OFAC license issued that allowed the transfer of these assets back to VTBE. Otherwise, there would not have been blocked assets in Blocked Account 4851 at BANA on March 20, 2023.

There was nothing improper about Does bringing their TRIA execution in the Western District of North Carolina ("WDNC")—where Blocked Account 4851 was opened by BANA personnel at BANA headquarters and where BANA personnel maintain it.[2] There was no attempt to inconvenience VTBE by filing in North Carolina; as VTBE notes, it has no ties to the United States at all. There was nothing wrong about Does not naming VTBE as a party or formally serving it; the owner of the blocked assets in a TRIA execution simply is not a party in a TRIA proceeding. An *ex-parte* writ was wholly proper, and VTBE suffered no deprivation from it, as it concerned a Blocked Account. Does did not hope to "seize VTBE's money without VTBE ever being heard on the matter"; to the contrary, Does provided support in their initial writ application for the preliminary finding that the Court then made, and informed the Court in that application that they would file a motion for turnover, and provide notice of the proceedings and an opportunity for VTBE to be heard, before any deprivation of its rights. Does did just that. *See* WDNC action Dkts. 15:4, 18, 20. As to the timing of Does consent to VTBE's intervention in the WDNC, that consent was given on May 11, 2023, not to avoid this Court, but because on May 9, 2023, VTBE clarified to the WDNC that it did not claim standing as a successor entity liquidator, but as the same bank, still owned ultimately by the Russian Federation, which has owned the blocked assets all along.[3]

---

[1] Counsel for Bank of America ("BANA") informed counsel for Does that the source account was a correspondent banking account that VTBE maintained with BANA to secure wire transfers, and that it did not consist of depositors' funds.

[2] Its maintenance consists of filing blocked asset reports to the Treasury Department, which is done by BANA personnel in Charlotte, North Carolina.

[3] When VTBE initially moved to intervene in the TRIA action in the WDNC, it asserted that it is a "German Bank" and, specifically, "not a 'Russian Bank'"; it invoked VTBE's liquidation by German authorities; and it cited cases standing for the proposition that a liquidator steps into the shoes of the *former* owner the assets, and thus has standing. *See* WDNC action Dkt. 21-1:5, 11-12. Does pointed out in response that a successor entity could claim no interest in assets that had been blocked in a foreign nation prior to the liquidation. *See* WDNC action Dkt. 26:11-12*, citing United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 959 F. Supp. 2d 81 (D.D.C. 2013). VTBE replied, pivoting away from its assertions that characterized it as a German successor liquidator, and asserted that Does misunderstood: that there is no independent liquidator and there has been no transfer of VTBE's ownership or its interests in any property, including the blocked property. *See* WDNC action Dkt. 28:ii, 6-9. Two days later, Does agreed that VTBE, since it was now presenting itself as the Russian-federation owned bank that owned the blocked assets, and not some German successor, should be allowed to intervene. WDNC action Dkt. 31-1:3. Does stressed, however, that:
> Having pivoted away from its "liquidator" argument, and having put forth evidence that Germany lacked effective control over it as of March 24,

It is not Does whose actions reveal avoidance of a proper forum. Having provided the WDNC evidence proving that VTBE answered to Russia, the Taliban's sponsor, as of March 24, 2023, VTBE hopes to change course. It has latched on to BANA's purposeless interpleader[4] in the hopes to both derail the WDNC proceedings and remake itself as the "German" liquidator once again before this Court.

I. **Venue over the TRIA execution against Blocked Account 4851 that Does previously filed in the WDNC is proper there, not New York; besides, the WDNC is the court to determine venue.**

VTBE first argues that "Venue is proper in New York". It then requests this Court to declare itself "a proper venue for this action". That begs the question—who decides the question of venue? On that question, the law is clear: the district court where the first action is filed decides venue over that action. *See* Dkt. 26:3 and cases cited. To bolster the ample precedent previously provided to the Court, in cases where a party that is sued in one district files an interpleader in another, courts in this district and others have long held that "[a]bsent exceptional circumstances, the federal court first seized of an action should be the one to adjudicate it." *Com. & Indus. Ins. Co. v. Cablewave, Ltd.*, 412 F. Supp. 204, 207 (S.D.N.Y. 1976) and cases cited. And, "[i]n the interest of judicial economy, if an action is already pending against a party who desires to interplead others, that party should proceed by way of a counterclaim under Fed. R. Civ. P. 13. *Id.* Finally, "it is not for this court [where the interpleader was filed], brought into the fray as a second arena, to determine the choice of forum. That decision should and will be left to the federal court having prior jurisdiction, where the usual form of motion to transfer pursuant to 28 U.S.C. § 1404(a) may be employed to present the problem." *Id.* at 208.

Regardless, the case that VTBE makes for venue here is simply wrong. First, contrary to VTBE's assertions, no defendants in the TRIA execution proceeding reside in New York. Second, no part of the acts or omissions giving rise to the TRIA execution proceedings arose in New York. VTBE acted as part of Putin's slush fund in Europe. Treasury blocked VTBE's asset in Washington, D.C. BANA officials in Charlotte, North Carolina created the blocked account at issue and have maintained it since in North

---

2023, VTB Bank Europe SE cannot pivot back to arguing that it is a creature of German control at any time relevant to this proceeding. Nor can it imply German ownership. The Court should be clear that VTB Bank Europe SE's interest in the assets is ultimately Vladimir Putin's. He and his cronies are the ultimate beneficiaries of proposed intervenor's claimed interest.

WDNC action Dkt. 31-1:3.

[4] The interpleader is purposeless because BANA would face no jeopardy by complying with a WDNC turnover order. *See Sutherlin v. Wells Fargo & Co.*, 297 F. Supp. 3d 1271, 1277 (M.D. Fla. 2018) (dismissing lawsuit against a bank that had complied with a TRIA turnover order because the bank had a duty to comply with U.S. sanctions law and the turnover order, and it was the blocked entity's own responsibility to raise arguments in the TRIA proceeding).

Carolina. *See* Dkt. 26-1 and 26-2:2 (showing that a "Global Financial Crimes Compliance Specialist" whose address is "150 N COLLEGE ST … Charlotte NC" with area code "980" (Charlotte's area code) reported that "BANA transferred the full balance of $75,062,862.10 from client account [\*\*\*\*\*\*]6801 to blocked account 5359064158 …"). The Blocked Account is located in North Carolina.[5] Third, Does are not subject to personal jurisdiction in this District, as noted below. Finally, as Does pointed out, here, in fact, venue simply *cannot* lie, because necessary jurisdiction cannot be had over assets *already subject to a Writ of Execution in another district*. *See* Dkt. 26:5 and cases cited.

**II.     This Court does not have personal jurisdiction over John Does 1 through 7.**

Does informed the Court that they would move to dismiss this action against them because "[n]one of them has sufficient contacts to New York to support general jurisdiction over them, and by bringing an action against Blocked Account 4158 in the WDNC, they did not submit to the jurisdiction of this Court." Dkt. 26:5. VTBE argues that this Court can exercise personal jurisdiction over Does despite their lack of contacts to this forum. Quoting 28 U.S.C. § 2361, VTBE asserts that "[c]laimants in a statutory interpleader proceeding—like the Does—'may be served with process anywhere in the United States, even if they lack minimum contacts with the state in which the federal interpleader court sits[]'". Dkt. 29:3. The glaring flaw in this argument is that this action is not a "statutory interpleader" brought pursuant to 28 U.S.C. § 1335, but a "rule interpleader". In fact, BANA concedes in its interpleader complaint that this Court "would have" subject-matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1335 "but for" BANA's ability to meet §1335(a)(2)'s requirement of depositing the funds or providing a bond. Dkt. 1:4 n. 2. The law is clear that nationwide service of process is not available in rule interpleaders. *See State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 528 n.3 (1967); *see also Hartford Life Ins. Co. v. Simonee*, No. 14-CV-7520, 2015 U.S. Dist. LEXIS 166433, at \*6 n.3 (E.D.N.Y. Dec. 10, 2015) ("Rule 22 and statutory interpleader actions also have different requirements for service of process. Pursuant to Rule 22, the 'usual service provisions' of Rule 4 of the Federal Rules of Civil Procedure apply. By contrast, nationwide service of process pursuant to 28 U.S.C. § 2361 is available for statutory interpleader actions, thus permitting a stakeholder to reach claimants in a number of states.") (internal citations omitted). The Court of Appeals for the Second Circuit has affirmed that Section 1335(a)(2) is a jurisdictional requirement. *See Metal Transp. Corp. v. Pac. Venture S.S. Corp.*, 288 F. 2d 363, 365 (2d Cir. 1961)

---

[5] Prior to Does moving for issuance of the Writ of Execution in this matter, counsel for BANA informed counsel for Does that Blocked Account 4851 "exists as an electronic entry on Bank of America's books and that Bank of America does not consider the Blocked Account to have any locus." *See* WDNC Docket, DE 20-1:2 Decl. of John Thornton. BANA'S counsel indicated BANA would not object to TRIA proceedings in North Carolina. This was consistent with BANA's position concerning a prior Blocked Account BANA created with funds from Florida that Does executed against in the WDNC. *See* WDNC Dkts 10-14. (Of course, Does's counsel, based in Miami, would have been happy to execute against the Blocked Account in Florida, but went to the jurisdiction where the Blocked Account was opened—the WDNC).

(quoting 28 U.S.C. § 1335). Thus, an interpleader plaintiff's failure to satisfy the deposit or bond requirement "makes a Section 1335 interpleader improper." *See e.g.*, *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC,* 2019 U.S. Dist. LEXIS 159909, at *22 (S.D.N.Y. Aug. 26, 2019). Clearly, neither VTBE nor BANA can rely on 28 U.S.C. § 2361 to assert personal jurisdiction over Does in this action, which is lacking.

### III. This court should at a minimum stay this action, but should actually dismiss it in favor of the prior-filed action in the WDNC.

VTBE finally argues that this Court should not stay this action based on a smattering of baseless arguments. First, the fact that VTBE intends to file a motion to transfer venue before the WDNC augurs against its proposed motions here. The WDNC should obviously hear a motion that VTBE intends to file before it.

Second, it's *quasi in rem* argument, which it uses to convince this Court that it has personal jurisdiction over Does, is based on incorrect facts, and lacks legal support. First, Blocked Account 4851 is in Charlotte, North Carolina, not New York. As has been shown, the New York account had been closed, and the assets in it been transferred out and into a Blocked Account in North Carolina by March 18, 2022. *See* 26-2:2. Blocked Account 4851 is subject to a writ in the WDNC, precluding this Court from attaching the same asset. *See* 26-3:4-5. The case VTBE cites as establishing "*quasi in rem* jurisdiction in over the Does", *Caballero v. Fuerzas Armadas Revolucionarias De Colombia*, 562 F. Supp. 3d 867 (C.D. Cal. 2021), in no way stands for the proposition that that concept can be used to establish personal jurisdiction over the terrorist judgment creditor bringing a TRIA execution, but certainly not where the assets are subject to a writ elsewhere.

Additionally, there are no service or due process issues, as owners of the assets in TRIA executions are not parties to the proceedings and need not be served (in North Carolina as well as New York, as the earlier execution in the WDNC action demonstrates). Because it is not directly owned by a state or its political subdivision, VTBE does not qualify as a state instrumentality that merits special service under the Foreign Sovereign Immunities Act. *See* 28 U.S.C. 1603(b)(2); *see also Weininger v. Castro*, 462 F. Supp. 2d 457 (S.D.N.Y. 2006). And, there will be no turnover without VTBE having the opportunity to contest every relevant aspect of the proceeding in the WDNC. As a TRIA case VTBE quotes (puzzlingly, for the proposition that the WDNC cannot decide the questions it raises concerning venue) states: "the *quid pro quo* for [the blocked asset owner's' intervention is that *he consents to have the district court determine all issues in the case, including issues of jurisdiction, venue and service of process.*" Dkt. 29:5 quoting *Caballero v. Fuerzas Armadas Revolucionarias de Columbia*, No. 20-mc-80146-JST, 2021 U.S. Dist. LEXIS 84403, at *6 (N.D. Cal. Apr. 12, 2021). VTBE clearly consented to have these issues—jurisdiction, venue and service of process—decided by the WDNC.

John Does 1-7 and their counsel appreciate the Court's time and consideration of this matter.

5

Sincerely,

s/*John Thornton*
John Thornton *(pro hac vice)*
Orlando do Campo
do Campo & Thornton, P.A.
150 S.E. 2nd Avenue, Ste. 602
Miami, Florida 33131
(305) 358-6600
jt@dandtlaw.com