**Davis Polk**

Craig T. Cagney
+1 212 450 3162
craig.cagney@davispolk.com

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
davispolk.com

July 27, 2023

Re: *Bank of America, N.A., v. John Does 1 Through 7, et al.*,
    Case No. 1:23-cv-03604

The Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall United States Courthouse
Room 705
40 Foley Square
New York, NY 10007

Dear Judge Gardephe:

We represent Plaintiff-Garnishee Bank of America, N.A. ("BANA") in the above-referenced matter, and submit this letter in response to the pre-motion letters filed by Defendants-Adverse Claimants John Does 1 Through 7 ("Does") (Dkt. No. 26) and VTB Bank Europe S.E. i.L. ("VTBE") (Dkt. No. 29).

*Background*

BANA is a neutral garnishee that holds $75 million in blocked assets to which Does and VTBE have asserted competing claims. BANA's only interest is avoiding the risk of inconsistent judgments and multiple liability, which it believes can best be accomplished through this interpleader proceeding.

The blocked assets originated from a correspondent account opened by and maintained for VTBE at BANA's New York branch. In 2022, following the expansion of U.S. sanctions against Russia, BANA blocked the $75 million in assets contained in the correspondent account, and according to its usual process, transferred them to a segregated blocked account. The process of reporting the blocked assets to the Treasury Department's Office of Foreign Assets Control ("OFAC") was performed by personnel located at BANA's principal place of business in North Carolina, and the blocked account is assigned to a cost center associated with South Carolina.

The Does seek turnover of the blocked assets in satisfaction of their judgment against the Taliban under the Terrorism Risk Insurance Act of 2002 ("TRIA"), based on their allegations that VTBE is an agency or instrumentality of the Taliban. Although the Does are correct that there is authority suggesting that personal jurisdiction over the garnishee alone may be sufficient for turnover, BANA was aware that third parties who have been alleged to be agencies or

**Davis Polk**

instrumentalities of terrorist parties have often disputed that proposition in TRIA litigation.[1] BANA therefore had concerns that VTBE might have personal jurisdiction objections to suit in North Carolina—just like those that VTBE has raised in its pre-motion letter—and might collaterally attack any turnover order or discharge entered in favor of BANA by the WDNC even if VTBE did not appear to defend the Does' turnover motion.  In addition, while the Does note that VTBE agreed to suit in the forum in which BANA "currently maintain[s] your account" when it opened the correspondent account with BANA, Compl. ¶ 12 (Dkt. No. 1), the "current" location of the blocked assets is disputed, whereas "the state where [BANA] opened" VTBE's account, *id.*, was indisputably New York.  For all these reasons, BANA believed an interpleader proceeding in New York was the best way to ensure it could obtain complete relief and a discharge from all liability to VTBE.

On April 27, 2023, the Does chose to commence turnover proceedings in the Western District of North Carolina ("WDNC") despite BANA's concerns about jurisdiction over VTBE, but requested that any resulting turnover order be "stayed until Bank of America, N.A. has served VTB Bank Europe SE with notice of these proceedings or an interpleader action pursuant to the Hague Convention, and VTB Bank Europe SE's time to respond has passed."  Proposed Turnover Order at ¶ 6, *Does v. Taliban*, No. 3:20-mc-00206 (W.D.N.C. Apr. 27, 2023) (Dkt. No. 20-8).  The Does' Proposed Order required BANA to institute service within 10 days of entry of the turnover order, and to provide proof of service within 90 days.  Because the WDNC had previously granted a similar turnover motion filed by the Does just one day after the motion was filed, and service under the Hague Convention can take months, BANA promptly initiated this interpleader action on April 28, 2023 so that it would be in a position to comply with the service provisions in the Does' proposed turnover order.  Because BANA had not yet appeared in the WDNC litigation, however, BANA was unaware that, on the same day, VTBE had moved to intervene in the WDNC proceedings.

---

[1] BANA notes that the authorities finding jurisdiction over the garnishee to be sufficient generally arise in the context of property allegedly owned by the judgment debtor itself, *see, e.g., RCA Corp. v. Tucker*, 696 F. Supp. 845, 848 (E.D.N.Y. 1988), where jurisdiction over the debtor has already been established in order to enter or recognize the judgment.  These authorities generally do not involve the type of "veil piercing" permitted by TRIA, which provides that a judgment creditor of a terrorist party may use "the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party)" to satisfy their judgments.  TRIA § 201(a), *codified at* 28 U.S.C. § 1610 note.

**Davis Polk**

*Staying This Action Pending Further Proceedings in the WDNC Proceedings Would Promote Efficiency*

As explained above, BANA's intention in filing this interpleader action was solely to ensure that it could obtain complete relief in the event of turnover, and not to unnecessarily duplicate efforts already underway in the WDNC.  Now that VTBE has moved to intervene in the WDNC proceedings, and the Does have consented to VTBE's intervention, BANA believes that a stay of this action pending further proceedings in the WDNC would be appropriate and the most efficient course of action, so long as any turnover order that might be entered in the WDNC will, in turn, be stayed (as the Does had provided in their proposed turnover motion) until this Court can resolve BANA's claim for interpleader relief.

As this Court has recognized, "[a] stay may be appropriate 'in light of a concurrently pending federal action'" and "'the first suit should have priority.'"  *Readick v. Avis Budget Grp., Inc.*, No. 12 Civ. 3988-PGG, 2014 WL 1683799, at *2 (S.D.N.Y. Apr. 28, 2014) (Gardephe, J.) (quoting *SST Global Tech., LLC v. Chapman*, 270 F.Supp.2d 444, 455 (S.D.N.Y.2003) and *Ft. Howard Paper Co. v. William P. Witter, Inc.*, 787 F.2d 784, 790 (2d Cir.1986)).  Moreover, this District usually applies a "bright-line rule" that the first-filed forum should decide disputes concerning venue to avoid duplicative efforts and inconsistent results.  *See Monroe Staffing Servs., LLC v. Whitaker*, No. 20 Civ. 1716-GBD-BCM, 2022 WL 684714, at *8 (S.D.N.Y. Mar. 7, 2022) ("Just as the first-filed rule itself guards against 'duplicative litigation' that could lead to inconsistent results, the rule that '[t]he court before which the first-filed action was brought determines which forum will hear the case,' guards against duplicative venue rulings, from two different courts, 'that conflict with one another.'" (cleaned up and citations omitted)).

VTBE argues that this Court need not defer to the first-filed WDNC action, because the WDNC is not a proper venue.  While BANA fully agrees with VTBE's arguments that the SDNY is a proper venue, BANA acknowledges that the Does dispute the situs of the blocked assets.  The situs of a bank account is a mixed question of law and fact that may depend on the totality of the facts and circumstances.  *See Aurelius Capital Partners, LP v. Republic of Argentina,* No. 07 CIV. 11327, 2010 WL 768874, at *4 (S.D.N.Y. Mar. 5, 2010) (considering various factors to determine the situs of a custody account opened at an Argentina branch, including that the bank performed some activity on the account in the United States, but concluding that the property was located outside the United States because "there were and still are actual live transactions regarding that property, all of which have taken place, and are taking place, in Argentina").  Even though BANA believes that New York has the strongest connection to the blocked assets, and its position is that the blocked account has the same situs as the original correspondent account—i.e., in New York—either this Court or the WDNC will need to address the Does' arguments that the situs of the blocked assets is in North Carolina, where BANA is headquartered and where its employees who reported the blocked account are located.  BANA is not aware of any reason why that issue cannot be addressed by the WDNC in the first instance.  Indeed, VTBE asserts that it "is confident that its motion to intervene will be granted by the WDNC court, after which VTBE will move to dismiss or transfer the WDNC Action to this

**Davis Polk**

Court." (Dkt. No. 29 at 3). If VTBE intends to file a motion to transfer in the WDNC proceedings in any event, staying these proceedings until the WDNC can resolve that motion would avoid duplicative efforts.

While BANA sees no reason why the WDNC cannot resolve the venue issue in the first instance, BANA does believe it could be prejudiced by a stay if the WDNC denies VTBE leave to intervene, or if BANA is required to comply with a turnover order before this Court resolves BANA's request for a discharge in interpleader, including its claims for declaratory relief under BANA's agreement with VTBE. *See* Compl. at 14 ¶ e (Dkt. No. 1). Because the Does have consented to VTBE's intervention in the WDNC, however, BANA does not believe it is likely that the WDNC will deny VTBE's motion to intervene. In addition, BANA believes any risk of prejudice can be avoided if this Court's stay is conditioned on the Does agreeing to stay the enforcement of any resulting turnover order entered by the WDNC until this Court can resolve any remaining issues in these interpleader proceedings.

For all of these reasons, BANA believes that the Does' request to stay this action is the most prudent and efficient course of action, so long as this Court's stay is conditioned on the Does' agreement to stay enforcement of any resulting turnover order issued by the WDNC until these interpleader proceedings can be resolved.

***The Interpleader Action Should Not Be Dismissed***

BANA disagrees with the Does' contention that dismissal is appropriate. "As part of its general power to administer its docket, a district court may <u>stay or dismiss</u> a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (emphasis added). "The complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion." *Id.* The equities in this case at best favor a stay, but certainly not dismissal.

For all the reasons set forth in VTBE's pre-motion letter, there are legitimate questions about whether the WDNC is a proper venue with jurisdiction over VTBE. Until those questions are resolved, it is unclear whether the WDNC is a proper venue or if it has the ability to afford complete relief to BANA by entering a turnover order and discharge that will be binding on VTBE. It would be inequitable to dismiss this action before the WDNC can address those issues, thereby exposing BANA, a neutral garnishee, to a $75 million risk of double liability.

Does argue that dismissal is proper because "when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*," (Dkt. No. 26 (quoting *Marshall v. Marshall*, 547 U.S. 293, 311 (2006), but this argument puts the cart before the horse. The Does assume that the blocked assets are located in North Carolina and that the WDNC has *in rem* jurisdiction over those assets, but as explained above, that issue is disputed. There is no reason to conclude that this Court and the WDNC are each exercising *in rem* jurisdiction over the same assets until the situs of those assets is resolved. For similar reasons, it

**Davis Polk**

is premature for the Does to move to dismiss the interpleader complaint for lack of personal jurisdiction, because this Court would have sufficient jurisdiction to adjudicate the Does' claims to the blocked assets if this Court has *in rem* jurisdiction over those assets, as BANA has alleged.

Accordingly, there is no justification for dismissing the interpleader.

***VTBE's Proposed Motion for Judgment on the Pleadings Is Not the Most Efficient Way to Resolve the Venue Dispute***

Although BANA agrees with VTBE's arguments that this Court is a proper venue and that all parties are subject to jurisdiction here, it disagrees with VTBE's proposal to resolve those questions in this Court through a counterclaim and a motion for judgment on the pleadings. As VTBE concedes, it will need to move to transfer the WDNC proceedings regardless of any steps it takes in this Court. (Dkt. No. 29 at 3). Pursuing a counterclaim for declaratory relief on the same issues will unnecessarily duplicate efforts, and would also risk wasting the parties' resources briefing other motions—such as the Does' proposed motion to dismiss the interpleader complaint under the first-filed rule and for lack of personal jurisdiction—that may become moot if, for example, the WDNC decides to transfer the turnover proceedings to this Court.

For all these reasons, BANA believes a stay pending further proceedings in the WDNC is the most efficient course of action, but on the condition that, if the WDNC enters a turnover order, the Does will not seek enforcement until this Court can resolve any remaining issues in these interpleader proceedings.

Respectfully submitted,


*/s/ Craig T. Cagney*
Craig T. Cagney

July 27, 2023                                                                                                               5